IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSHUA MITTWOL, on behalf of himself
and all others similarly situated,

       Plaintiff,

       v.

PELOTON INTERACTIVE, INC.,

       Defendant.

Civil Action No. 23-00156

Chief Judge Mark R. Hornak

**ELECTRONICALLY FILED**

## PLAINTIFF'S *AGREED* MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS; APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL; APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE; AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, JOSHUA MITTWOL ("Plaintiff"), hereby files this Agreed Motion for Preliminary Approval of Class Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support, as follows:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant, PELOTON INTERACTIVE, INC. ("Defendant"), operates in several states throughout the country in which it sells and delivers branded exercise equipment. *See* ECF 27 at 27. Defendant has employed Field Specialists, like the Plaintiff, to deliver Peloton devices to its customers and otherwise assist with the installation of these devices. *Id.* at 28. The Plaintiff alleges that, during periods within the past 6 years, Defendant employed him and other Field Specialists (hereinafter "Field Specialists") and enforced an automatic meal deduction policy which removed hours worked in a workweek regardless of whether meal breaks were taken by the Field Specialists.

The Plaintiff alleges that this policy was enforced throughout New Jersey and resulted in violations of the overtime provisions of the New Jersey Wage and Hour Law ("NJWHL") and Fair Labor Standards Act ("FLSA") whenever Field Specialists worked in excess of forty (40) hours in a workweek. *Id.* The Plaintiff alleges that a class of similarly situated Field Specialists suffered damages under the NJWHL and that class certification is therefore appropriate under Fed. R. Civ. P. 23.

Subject to Court approval, the Plaintiff and the Defendant (hereinafter "the Parties") have settled the Plaintiff's claims for monetary relief up to $110,000.00. The proposed settlement satisfies all criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure and the FLSA. Attached to this motion is the Declaration of Jordan Richards, Esq.—the Plaintiff's lead counsel. Exhibit "A" (referred to herein as (the "Richards Declaration.") Attached to the Richards Declaration is the Stipulated Class Action Settlement Agreement and Release ("Settlement Agreement"), the proposed Notice of Class Action Settlement ("Notice"), and qualifications of Mr. Richards, Mr. Miller, Mr. Logue, and Mr. Setcavage to serve as Class Counsel in this case. With this agreed motion, the Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the attached Settlement Agreement; (2) certify the putative class and collective of Field Specialists for settlement purposes; (3) appoint the undersigned as Class Counsel; (4) preliminarily approve the class and collective settlement and proposed Notice, and direct its distribution to the class; and (5) approve the proposed schedule for final settlement approval, as outlined herein.

## II.    **FACTUAL AND PROCEDURAL BACKGROUND**

### a. **Factual Allegations**

The Plaintiff worked for the Defendant as a Field Specialist in New Jersey from October 2018 through August 2020. Including the Plaintiff, there are approximately 75 former Field Specialists who worked for Defendant in the State of New Jersey from December 7, 2016, through

June 9, 2023. *See* Exhibit A. The Plaintiff filed this class action lawsuit seeking to recover unpaid wages from the Defendant based on violations of the FLSA and NJWHL for failure to pay proper overtime wages to himself and other Field Specialists within the six-year period preceding the filing of the initial complaint. *See* ECF No. 1. The Plaintiff alleges that during periods of his employment, he and other Field Specialists were purportedly subject to automatic meal deductions regardless of whether any meal break was actually taken. The Plaintiff alleges that the Defendant is liable to him and a class of similarly situated Field Specialists for an amount equal to 1.5 times their regular hourly rate for all overtime hours that were unlawfully deducted. The Plaintiffs, on a collective basis, also allege that the Defendant violated the FLSA's provisions by failing to pay Field Specialists proper overtime wages for certain hours worked.

This lawsuit has been pending since December of 2022. *See Id*. Although this settlement has been reached at a relatively early procedural stage, the Defendant has asserted a number of defenses in its Answer and the Parties have engaged in extensive discovery and document production. *See* Exhibit A. The Parties have further participated in a lengthy mediation with the assistance of respected mediator Carole Katz, Esq. *See id*. While the Defendant is willing to fully resolve these claims on a class-wide basis, the Defendant maintains no violations of law were committed. The Parties also continue to disagree about the viability of class certification, along with the scope, type and amount of damages each Field Specialist would be entitled to receive (if any), even if the Plaintiffs were to ultimately prevail in the case. The Defendant asserts that it always complied with applicable New Jersey and federal laws, and always paid its Field Specialists in accordance with applicable laws.

### b. Procedural History

The Plaintiff commenced this lawsuit on December 7, 2022, by filing a Class/Collective Action Complaint and demanding a jury trial take place in the Court of Common Pleas of

Allegheny County. *See* ECF No. 1. On January 31, 2023, Defendant filed its Notice of Removal to this Honorable Court. *Id.* After a brief stipulation to extend deadlines, Defendant filed its Answer and Affirmative Defenses to the initial Complaint on February 23, 2023. *See* ECF No. 9. Thereafter, the Parties elected to participate in the early Alternative Dispute Resolution process and attended a mediation with Carola Katz, Esq. on June 9, 2023. *See* ECF No. 16. After a full day of negotiation, the Parties successfully reached a class-wide resolution. *See* ECF No. 23. The parties agreed to enter into a class-wide resolution (for settlement purposes only) to fully resolve the claims in this lawsuit and provide a common fund that will allow Field Specialists to participate in a claims process and receive significant and meaningful compensation to be administered by a third-party claims administrator.

### c. Discovery

Both Parties produced discovery in this case concerning the payroll records kept and maintained by Defendant during the relevant time period and the total number of weeks in which overtime hours were worked by Field Specialists. To date, hundreds of pages of documents have been exchanged by the Parties, including payroll reports, employee rosters, policies, and other relevant information concerning the claims alleged in this case. *See* Exhibit A. Plaintiff's counsel has conducted their own independent investigation into claims, including an independent evaluation of the number of Field Specialists employed by the Defendant in the State of New Jersey during the relevant time period. *See* Exhibit A. The Defendant provided verified information concerning the total number of weeks in which overtime hours were worked by the Field Specialists from December 7, 2016, through June 9, 2023. *Id.*

As discussed above, Plaintiff alleges Defendant's August 23, 2019 Meal and Rest Break Policy resulted in unlawful automatic meal deductions. From August 23, 2019 through June 9, 2023 (the "Relevant Time Period"), there were a total of 1,206 workweeks in which Field

Specialists worked over 38 hours. The Plaintiff has been given an opportunity to review and evaluate the Defendant's corporate policies, payroll records, employee rosters, internal records pertaining to shifts worked by the Field Specialists and work schedules. In addition, Plaintiff's counsel conducted an extensive interview with the Plaintiff concerning the veracity of these documents and comparing the documentation to information kept and maintained by the Plaintiff during the course of his employment. *See* Exhibit A.

### d. Settlement Negotiations

On June 9, 2023, the Parties attended a Zoom mediation with Mediator Katz. *See* ECF No. 16. During that mediation, Ms. Katz and the Parties were able to make progress concerning the scope and viability of certain claims in this case. Following mediation, the Parties executed a memorandum of understanding concerning material terms and conditions of the settlement. *See* Exhibit A. To date, the Parties have engaged in hours of negotiations in this case including those spent before and during mediation; extensive discovery materials including those eliciting the size of the class, the total number of hours worked by members of the class and the relevant time period were exchanged.

The Parties have now reduced their agreement to a formal Stipulation of Class Action Settlement Agreement and Release, which they are now presenting to the Court for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b) of the Fair Labor Standards Act. *See* Settlement Agreement attached as Exhibit A.

### III. SUMMARY OF THE SETTLEMENT TERMS

### a. The Settlement Fund

The Defendant has agreed to create a settlement fund of up to $110,000.00 (hereinafter "the Fund"). *See* Settlement Agreement attached to Exhibit A. The Fund will cover awards to class members, Court-approved attorney's fees and costs, Court-approved service award payment to the

Plaintiff and for entering a general release of claims with the Defendant, and the costs of administering the settlement. *Id.*

### b.  Release

The Class Members who do not "opt-out" of the settlement will release all wage-and-hour claims against Defendant, except claims under the FLSA. *Id.* Any individual who submits a claims form will also release any and all claims arising under the FLSA. *Id.*

### c.  Eligible Class Members

The Rule 23 class consists of approximately 75 current and former Field Specialists who worked for the Defendant between December 7, 2016, and June 9, 2023, and who: (i) were regularly assigned to a warehouse located within New Jersey during that period; (ii) have not previously released wage-and-hour claims against Peloton; (iii) have not agreed with Peloton to a forum-selection clause requiring litigation outside New Jersey; and (iv) have not agreed to arbitrate any unreleased claims. *Id.*

### d.  Allocation Formula

Class members who timely submit claim forms (through a "claims-made" process) will be paid pursuant to an allocation formula based on the number of weeks they worked more than 38 hours for Defendant during the Relevant Time Period. *Id.* Courts within the Third Circuit have frequently upheld claims-made processes finding it "perfectly appropriate to require Class members to submit certain information proving that they are entitled to collect relief awarded in this case." *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 at *6 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011). ("There is nothing inherently suspect about requiring class members to submit claims forms in order to receive payment") *Jackson v. Wells Fargo Bank*, 136 F. Supp 3d 687, 708-9 (W.D. Pa. 2015) (*quoting Fifth Third Bank*, 805 F. Supp. 2d 560,

593 (N.D. Illinois, Eastern Division, 2011). In this case, a claims-made process would not prejudice any potential Class Members or the Defendant.

Per Internal Revenue Service (IRS) regulations, a Form W-2 shall be issued by the Defendant to the Plaintiff and to each Class Member to whom compensation is found to be owed pursuant to the settlement terms. Exhibit A. Pursuant to the allocation formula, Class Members will receive a guaranteed minimum distribution of $25, and a proportionate amount based on every single week in which they worked over 38 hours during the relevant time period. *See* Settlement Agreement. The class fund will compensate a total of 1,206 weeks in which more than 38 hours were worked by Field Specialists during the relevant time period.

### e. Attorney's Fees and Litigation Costs

The Plaintiff's counsel will apply for approximately $36,666.66 to be paid from the Fund as attorney's fees and reimbursable costs as well in the amount of $3,345.50, for a grand total of $40,012.16.[1] The Plaintiff's counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2). The Settlement Agreement is not conditioned on the award of attorney's fees, and explicitly states that it is to be considered separately from any application for attorney's fees. *See* Exhibit A. It is worth noting that the Court need not decide the attorney's fees and costs at this time.

### f. Consideration for the Plaintiff's Service Award and Mutual General Release

In addition to his award under the allocation formula as a member of the putative class, counsel proposes that the Plaintiff will also receive payment in the amount of $15,000.00 as a

---

[1] This is within the range of a typical fee award in a common fund case. *See, e.g., Galt v. Eagleville Hospital*, 310 F. Supp 3d 483, 498 (E.D. Pa., 2018)(fee awards in common fund cases range from 19 to 45%.); *In Re General Instrument Sec. Litigation*, 209 F. Supp. 2d 423, 433 (E.D. Pa. 2001) ("no general rule as to what percentage is appropriate;" citing progeny of cases where one-third fee was awarded); *Esslinger v. HSBC Bank Nevada, N.A.*, 2012 WL 5866074 at *14 (E.D. Pa. Nov. 20, 2012) (finding that in private contingency fee cases, lawyers routinely negotiate agreements for 30-40%, thus finding an award of fees for 30% "squarely within that range.")

service award and for a general release of claims. *See* Exhibit A, at Ex. 1. The Plaintiff spent days

of his life assisting the Class Members' discovery, negotiation and resolution of this matter.

Furthermore, service awards are not uncommon and separate consideration paid to a class

representative from the common fund in exchange for executing a general release is permissible

under a Rule 23 analysis. *See, e.g., Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 496 (E.D. Pa. 2016)

(Approving compensation for class representatives for services they provide, risks they incur and as

a reward for the benefit to the class and public at large) (*See Bredbenner*, 2011 WL 1344745, at *22

(*citing Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Hall v. Best Buy Co., Inc.*,

274 F.R.D. 154, 173 (E.D. Pa. 2011).

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval

in class action settlements that include three distinct steps:

> 1.    Preliminary approval of the proposed settlement after submission to
> the Court of a written motion for preliminary approval;

> 2.    Dissemination of mailed and/or published notice of settlement to all
> affected class members; and

> 3.    A final settlement approval hearing at which class members may be
> heard regarding the settlement, and at which argument concerning the fairness,
> adequacy, and reasonableness of the settlements may be presented.

*See* Fed. R. Civ. P. 23(e); *See also*, § 13:1 Class action settlements, 4 Newberg and Rubenstein on

Class Actions § 13:1 (6th ed.); MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 (2004).

Following the aforementioned process is essential to safeguard Class Members' procedural due

process rights and enable the Court to fulfill its role as the guardian of class interests.

Within this motion, the Plaintiff respectfully requests that the Court take the first step—

grant preliminary approval of the Settlement Agreement and approve the proposed Notice and

authorize the claims administrator to send the approved Notice. The parties respectfully propose

for the Court's approval of the following schedule for final resolution of this matter:

1.      Within 14 calendar days of the Court granting preliminary approval, the Defendant will provide the third-party claims administrator with the full legal names and contact information for all class members. *See* Settlement Agreement, Exhibit A.

2.      Within 14 calendar days thereafter, the third-party claims administrator will mail the Notice to class members at their last known address. *See Id.*

3.      Class members will have 45 calendar days after the date the Notice is mailed to opt out or object to the settlement ("Notice Period"). *Id.*

4.      A final fairness hearing will be held as soon as is convenient for the Court.

5.      The Plaintiff will file a Motion for Final Settlement Approval no later than 14 days before the fairness hearing.

6.      The Plaintiff will contemporaneously file a Motion for Approval of Attorney's Fees and Costs when the Motion for Final Settlement Approval is filed.

7.      After the fairness hearing, if the Court grants the Plaintiff's Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "effective date" of the settlement will be 30 days after the Court enters its Final Order and Judgment. *See Id.*

8.      If an individual or party appeals the Court's Final Order and Judgment, the "effective date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired. *Id.*

9.      The third-party claims administrator shall pay the total amount of the Class Counsel's fees and the costs to Class Counsel in one payment. The Payment shall be made by no later than thirty (30) days after the effective date. *Id.*

10.     The third-party claims administrator will pay qualified Class Members their portion of the Net Settlement Fund, as described in the Settlement Agreement in two equal payments. The First Payment shall be made within thirty (30) calendar days after the effective date and will be subject to applicable withholding. *Id.* The Second Payment shall be made within ninety (30) calendar days after the effective date and will represent non-wage consideration. *Id.*

96617534v.5

11.    Amounts allocated to any Class Member who does not make a valid claim, or who elects to opt-out of the settlement, shall be retained by and remain the property of the Defendant.[2] *Id.*

### a.  Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23

Before a settlement may be approved, a number of prerequisites must be established. First, the Court must conditionally certify the settlement class. Fed. R. Civ. P. 23(c); 1 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.). Second, if the class is conditionally certified, notice must be sent to the class and Class Members must be given opportunity to object or "opt-out" of settlement. *See Id.* Third and finally, the Court must determine preliminarily whether the settlement is "fair and reasonable." Fed. R. Civ. P. 23(e)(1) & (e)(2); *See also*: *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *In re Nat'l Football League Players' Concussion Injury Litig.*, MDL 2323, 2014 WL 114351 (E.D. Pa. Jan. 14, 2014) (at preliminary approval stage, the standard of "fair, reasonable and adequate…is lowered"). The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *In re Nat'l Football League*, at *5; *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa 2000) (citing factors established in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). In addition to being substantively reasonable, the proposed settlement must be "the result of good faith, arms-length negotiations." *Id.*

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g.,* 1 Newberg and

---

[2] Claims-made class action settlements are frequently approved. *See In Re All-Clad Metal Crafters LLC Cookware Marketing & Sales Practice Litigation*, 2023 WL 2071481 at *7 (W.D. Pa. Feb 17, 2023) (approving, over objections, claims-made settlement where unclaimed funds reverted to the defendants); *See also*: *Taha v. Bucks County Pennsylvania*, 2020 WL 7024238 at *10 (E.D. Pa. 2020) (approving claims-made settlement).

Rubenstein on Class Actions § 13:1 (6th ed.). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See Id.* Settlement agreements are highly favored in the law, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir. 1995). In the instant matter, the settlement class satisfies the prerequisites of Rule 23(a) & (b)(3) as detailed below.

### i. Numerosity

The Third Circuit has explained that although no minimum number of plaintiffs is required to maintain a suit as a class action, a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s requirements of "numerosity" such that joinder is "impracticable" when the potential number of Plaintiffs exceeds 40. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018). Here, there are approximately 75 members of the proposed settlement class of Field Specialists in New Jersey For a variety of reasons, joinder of the 75 Plaintiffs is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met.

### ii. Commonality

The threshold for commonality under Rule 23(a)(2) is not high. Commonality requires that class members "share at least one question of fact or law in common with each other."*Reinig v. RBS Citizens, N.A.,* 912 F.3d 115, 127 (3d Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)); *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (the common contention must be capable of class-wide resolution and truth or falsity of that contention will validate or invalidate all claims.)

Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendant's class-wide pay policies and practices relating to whether

automatic meal deductions reduced the amount of overtime wages paid to Field Specialists in weeks in which they worked over 40 hours—an issue that is common to the entire Settlement Class.

### iii. Typicality

Rule 23(a)(3) asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The requirement is satisfied when a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Calhoun v. Invention Submission Corp.*, No. 2:19-CV-01396, 2023 WL 2411354, at *7 (W.D. Pa. Mar. 8, 2023) (*citing In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).

The Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendant, arise from the same legal theories, and allege the same type of harm and entitlement to relief. Thus, Rule 23(a)(3)'s typicality requirement is satisfied.

### iv. Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the class representative and the settlement class. The Plaintiff Joshua Mittwol has retained competent counsel to represent him and the settlement class. The Plaintiff's selected class counsel regularly engages in complex wage and hour class and collective action litigation in several states across the country and other complex litigation similar to the present litigation and have dedicated substantial resources to the prosecution of this action. *See* Exhibit A. Class counsel has previously been named adequate class counsel in similar wage and hour class action cases. *Id.; see, also, Windheim, et. al. v.*

*Tipsy Joe Corp.*, S.D. Fla. Case No. 0:22-cv-60278-CMA at D.E. 55 (Judge Altonaga granting final approval of Rule 23 class settlement and naming Mr. Richards class counsel); *see, also, Sparks, et. al. v. Kyodai Sushi Rock Café, Inc., et. al.*, Clay County Circuit Court Case No. 2022CA001268 (Feb. 2, 2023) (granting preliminary approval of class action wage and hour restaurant claims and naming Mr. Richards class counsel); *Laughlin, et. al. v. Fresh-Mex & Co. Corp., et. al.*, Duval County Circuit Court Case No. 16-2023-CA-1249 (Mar. 14, 2023) (granting preliminary approval of class action wage and hour restaurant claims and naming Mr. Richards class counsel); *Conrey, et. al. v. Beach Boys of Ft. Lauderdale, LLC*, S.D. Fla. Case No. 0:22-cv-60843-HUNT (Judge Hunt granting conditional certification of FLSA collective action and naming Mr. Richards counsel for FLSA collective comprised of Servers and Bartenders). Further information concerning Class Counsel's credentials can be found in the Richards Declaration attached hereto. *Id.*

Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the litigation, conducted extensive discovery and have obtained a resolution that benefits all members of the putative class. *See Esslinger v. HSBC Bank Vevada, N.A.*, 2012 WL 5866074, at *8 (E.D. Pa. 2012) (approving settlement without formal discovery.)

### v. Predominance and Superiority

With respect to predominance, Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (*quoting In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008)). Here, the predominance requirement is satisfied for settlement purposes because Defendant's conduct was common to all of the class members and all of the class members were harmed by Defendant's conduct. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). The common legal and alleged factual issues here predominate over individualized issues, and resolution of the common

issues for 75 settlement Class Members in a single, coordinated proceeding is superior to 75 individual lawsuits addressing the same legal and factual issues.

In sum, all of Rule 23's requirements are met for the purposes of certifying the proposed settlement class. Similarly, for the foregoing reasons, the settlement Class Members are similarly situated under the FLSA. Indeed, "the 'similarly situated' requirement for conditional certification is substantially less stringent than the Rule 23(b)(3) predominance requirement."" *Garcia v. Vertical Screen, Inc.*, No. 18-cv-4718, 2022 WL 282541, at *7 (E.D. Pa. Jan. 31, 2022). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Smith v. Merck & Co.*, No. 13-cv-2970, 2019 WL 3281609, at *5 n.5 (D.N.J. July 17, 2019). Thus, this Honorable Court should preliminarily certify this settlement class and collective under Rule 23 and the FLSA for settlement purposes only.

## IV.    <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

The law favors compromise and settlement of class action lawsuits. *See, e.g., Calhoun v. Invention Submission Corp.*, No. 2:19-CV-01396, 2023 WL 2411354, at *7 (W.D. Pa. Mar. 8, 2023) (*citing In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir. 1995); 4 Newberg and Rubenstein on Class Actions § 13:1("There is…a 'strong judicial policy in favor of class action settlement") (*citing: Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)). At the preliminary approval stage, the Court's task is to evaluate whether settlement is "fair, reasonable and adequate" using two procedural and two substantive factors. *Id.* at § 13:13. To assist the Court in its evaluation of substantive factors, they must determine whether: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir. 1995).

### a. Procedural factors

The primary procedural factor is whether the agreement arose out of an arms-length, non-collusive negotiation. *Id.* at § 13:14 Although courts can look to procedural posture of the case at settlement for indications that the agreement is legitimate, it may consider collusion less likely when settlement negotiations are conducted by a third-party mediator, as is the case *sub judice*. *See Id; See also: Udeen v. Subaru of America, Inc.* 2019 WL 4894568, *2 (D.N.J. 2019). Similarly, there has been a sufficient amount of discovery in this case to remove any doubt(s) about fair settlement negotiations; in the instant case, very thorough discovery was produced and was discussed in front of the third party neutral. *See Id.* at § 13:14.

"The procedural factors ask whether 'the class representatives and class counsel have adequately represented the class [and whether] the proposal was negotiated at arm's length.'" *Id.* at § 13:15. This brief contains a lengthy recitation of lead class counsel's experience and results in class action litigation and requests for preliminary approval. *See:* Agreed Motion for Preliminary Approval at (IV)(a)(iv).

### b.  Substantive factors

A proposed settlement should be preliminarily approved if it is establishes an "initial presumption of fairness." *Basile v. Stream Energy Pennsylvania, LLC*, 2018 WL 2441363, at *2 (M.D. Pa. 2018); 4 Newberg and Rubenstein on Class Actions § 13:13 (preliminary approval test created using *Manual for Complex Litigation* calling for approval if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range for judicial approval"). *See also: In re Nat'l Football League Players Concussion Inj. Litig.*,

961 F. Supp. 2d 708 (E.D. Pa. 2014) (it is the parties responsibility to supplement the Court's record and provide it with information necessary to evaluate fairness and/or adequacy of proposed settlement.). The substantive factors are an analysis of the adequacy of the class's relief and the equity of its distribution across the class. 4 Newberg and Rubenstein on Class Actions § 13:15 (*citing* Fed. R. Civ. P. 23(e)(2)).

In the instant action, the proposed settlement figure was reached through use of a third-party neutral, raising no question that it was reached using substantively fair methods.

### i.    The Settlement is Fair, Reasonable, and Adequate

The test for whether a proposed settlement is fair, reasonable, and adequate is done using several factors outlined in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). In fact, this Honorable Court has engaged in such analysis. *See Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007, 2019 WL 5394751 (W.D. Pa. Oct 22, 2019.) The nine factors in *Girsh* are:

> (1) The complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, at 157 (internal quotation and ellipses omitted).

Portions of the various factors outlined in *Girsh* are discussed *supra*. For instance, the relative complexity, large expense and likely lengthy duration of this case given the fact that there are 75 potential Class Members. Counsel expects the reaction of the class to this settlement to be positive given the Defendant's agreement to reimburse for time allegedly lost over the course of the Class Members' employment.

96617534v.5

As discussed herein, discovery in the matter so far has been fairly extensive and revealed enough information to make an informed settlement agreement through a third-party mediator. There are significant risks to the Class Members in establishing liability, as the Defendant has importantly not conceded to being liable and Class Members would be forced to prove the allegations within their Amended Complaint to survive a potential summary judgment motion and/or make it to trial. Furthermore and most importantly, the settlement value proposed is very reasonable given the relative size of the class and number of hours discovered to fall within the applicable time periods. It is the opinion of the Parties that settlement at this stage would therefore be more reasonable than continuing with what would be costly and lengthy litigation.

## V.    **<u>PROPOSED NOTICE</u>**

The contents of the proposed Notice, which is attached to the Richards Declaration vis-à-vis the Stipulated Class Action Settlement Agreement, fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. *See* Exhibit A. The Notice also explains the allocation formula, the basis on which each Class Member's award was determined, and the allocation of attorney's fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Claims Administrator, ILYM Group, will mail the Notices to the last known address of each class member within 28 calendar days of the Court's preliminary approval order. *See* Exhibit A. The Claims Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom notices are returned as undeliverable. *Id.* Class Members will have forty-five (45) calendar days to opt out of or object to the settlement. *Id.* Within thirty (30) calendar days of the Effective Date of the settlement, the Claims Administrator will mail Class Members their Payments. *Id.*

## VI.    CONCLUSION

For the reasons set forth above, the Plaintiff respectfully requests that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiff's counsel, USA Employment Lawyers – Jordan Richards PLLC, Jordan Richards, Esq., Michael Miller, Esq. and Quinn Logue, Matthew Logue, Esq., and Tyler Setcavage, Esq., as Class Counsel, approve the Settlement Notice, and enter the Proposed Order attached hereto.

Plaintiff, JOSHUA MITTWOL, now moves this Court to certify the following class of similarly situated Field Specialists:

> **All Field Specialists who worked for Peloton Interactive, Inc. between December 7, 2016, and June 9, 2023, and who: (i) were regularly assigned to a warehouse located within New Jersey during that period; (ii) have not previously released wage-and-hour claims against Peloton; (iii) have not agreed with Peloton to a forum-selection clause requiring litigation outside New Jersey; and (iv) have not agreed to arbitrate any unreleased claims.**

Plaintiff further requests that the Court enter an order consistent with the Proposed Preliminary Order attached hereto and grant the full relief sought within this agreed Motion.

96617534v.5

18

Respectfully Submitted,

QUINN LOGUE LLC


/s/ *Tyler S. Setcavage*
Tyler S. Setcavage, Esquire
Pa. ID No. 322867
Matthew T. Logue, Esquire
Pa. ID No. 87416

200 First Avenue, Third Floor
Pittsburgh, Pennsylvania 15222


USA EMPLOYMENT LAWYERS –
JORDAN RICHARDS PLLC


/s/ *Michael Miller*
Jordan Richards, Esquire
Florida Bar No. 108372
New York Bar No. 5859095
Michael Miller, Esquire
Florida Bar No. 0064005
New Jersey Bar No. 0057-2009
*Pro Hac Vice*

1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316

*Attorneys for Plaintiff and the Class*

96617534v.5

## CERTIFICATE OF CONFERENCE

Pursuant to the local rules, prior to the filing of the instant motion, the Parties conferred and agree as to the relief sought herein.

By: _/s/ Jordan Richards_
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 21st day of August 2023 and served on the counsel listed below.

By: _/s/ Jordan Richards_
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST

JACOB OSLICK, ESQ.
PA Bar No. 311028
joslick@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Ave. 32nd Floor
New York, NY 10018-1405
Tel: (212) 218-5500
Fax: (212) 218-5526
_Counsel for Defendant_

MATTHEW LOGUE, ESQ.
matt@quinnlogue.com
TYLER SETCAVAGE, ESQ.
tyler@quinnlogue.com
QUINN LOGUE LLC
200 First Ave. Third Floor
Pittsburgh, PA 15222
_Counsel for Plaintiffs_