IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA MITTWOL, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>    Defendant. | Civil Action No. 23-00156<br><br>Chief Judge Mark R. Hornak<br><br>**ELECTRONICALLY FILED** |

**PLAINTIFF'S *AMENDED AND AGREED* MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS; APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL; APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE; AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, JOSHUA MITTWOL ("Plaintiff"), hereby files this Amended and Agreed Motion for Preliminary Approval of Class Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support, as follows:

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

a.  **Background**

Defendant, PELOTON INTERACTIVE, INC. ("Defendant"), operates in several states throughout the country in which it sells and delivers branded exercise equipment. *See* ECF 27 at 27. Defendant has employed Field Specialists, like the Plaintiff, to deliver Peloton devices to its customers and otherwise assist with the installation of these devices. *Id.* at 28. The Plaintiff alleges that, during periods within the past 6 years, Defendant employed him and other Field Specialists (hereinafter "Field Specialists") and enforced an automatic meal deduction policy which removed

hours worked in a workweek regardless of whether meal breaks were taken by the Field Specialists. The Plaintiff alleges that this policy was enforced throughout New Jersey and resulted in violations of the overtime provisions of the New Jersey Wage and Hour Law ("NJWHL") and Fair Labor Standards Act ("FLSA") whenever Field Specialists worked in excess of forty (40) hours in a workweek. *Id.* The Plaintiff alleges that a class of similarly situated Field Specialists suffered damages under the NJWHL and that class certification is therefore appropriate under Fed. R. Civ. P. 23.

### b.  The Initial Settlement and Motion for Preliminary Approval

In June 2023, the Parties participated in a lengthy mediation with the assistance of respected mediator Carole Katz, Esq. and ultimately reached material terms on a settlement. While the Defendant is willing to fully resolve these claims on a class-wide basis, the Defendant maintains no violations of law were committed. The Parties also continue to disagree about the viability of class certification, along with the scope, type and amount of damages each Field Specialist would be entitled to receive (if any), even if the Plaintiffs were to ultimately prevail in the case. The Defendant asserts that it always complied with applicable New Jersey and federal laws, and always paid its Field Specialists in accordance with applicable laws.

The Plaintiff and the Defendant (hereinafter "the Parties") settled the Plaintiff's claims for monetary relief up to $110,000.00, subject to Court approval. *See* Ex. A. On August 21, 2023, Plaintiff filed his initial Agreed Motion for Preliminary Approval of Class Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support (hereinafter "the initial Motion"). *See* ECF No. 28. The Court held a hearing to address the initial Motion on September 19, 2023. *See* ECF No. 29. Prior to this hearing, the Court raised several issues with the settlement and requested that the Parties be

prepared to address these various issues at the hearing on September 19, 2023. *See* ECF No. 30. During the hearing on September 19, 2023, the Parties agreed to amend certain terms of the settlement to address issues raised by the Court. Then, on November 3, 2023, the Court entered an Order requiring the Parties to file their Amended Motion by no later than November 30, 2023, and to specifically address the recent Third Circuit Court of Appeals ruling in *In re Wawa Data Security Litigation*, No. 22-1950 (3d Cir. Nov. 2, 2023) and how this settlement is in conformity with the Third Circuit's ruling.

### c. The Amended Settlement

Following the initial preliminary approval hearing, the Parties amended the Settlement in 5 specific ways:

### i.      Relevant Time Period

First, the Parties have clarified that the Relevant Time Period will be December 7, 2016, through June 9, 2023. *See* Ex. A. This Relevant Time Period is now consistent throughout the entire Amended Settlement Agreement. *Id.*

### ii.      Guaranteed Minimum Payment for All Class Members

Second, the Parties have amended the agreement to specifically allocate $25 as a guaranteed minimum distribution to every single qualified class member regardless of when they worked for Defendant within the Relevant Time Period. During the hearing on September 19, 2023, the Court raised concern that under the terms of the initial Settlement Agreement certain Field Specialists employed in 2016 and 2017 could be prejudiced by waiving claims without receiving any compensation under the previously proposed allocation formula. This amendment provides guaranteed compensation to all class members and should alleviate the Court's concern on this issue.

### iii.      Point System Will Provide Pro-Rata Distribution of Settlement

Third, the Parties have agreed to implement a "point system" which will allocate specific points to the number of weeks in which a class member worked more than 38 hours as a Field Specialist in New Jersey. After the minimum $25 allocations are paid, the Parties have agreed to take the remainder of the Net Settlement Fund and allocate payment on a pro rata basis according to the number of "points" calculated for each qualified class member. This allocation formula is explained in further detail below.

### iv. Defendant Will Provide Class Members' E-mail Addresses to Claims Administrator Who Will Send Notice via E-mail to Any Class Member Who Does Not Receive Notice via U.S. Mail

Fourth, the Parties have agreed that in addition to providing the last known mailing addresses, the Defendant will also provide the Settlement Administrator with last known e-mail addresses for the class. The Settlement Administrator shall send Notice to class members via e-mail if problems arise in successfully delivering the Notice to class members via U.S. Mail.

### v. The Parties Have Modified the Confidentiality Language to Specifically Confirm that Class Counsel Shall be Permitted to Engage with Class Members and Answer Questions Concerning the Settlement During the Notice Period and Prior to the Final Approval Hearing

Finally, the Parties have amended the language concerning Class Counsel and Plaintiff's ability to discuss the terms of the settlement. The Amended Settlement Agreement now states that nothing will bar Class Counsel from answering Class Members' questions after issuance of Class Notice or in the administration of the settlement.

### d. The Amended Settlement is in Conformity with the Third Circuit's Recent Ruling in *In re Wawa Data Security Litig.*, No. 22-1950 (3d Cir. Nov. 2, 2023)

As set forth in further detail below, the Amended Settlement Agreement is in conformity with a recent ruling from the Third Circuit Court of Appeals. The terms of the Amended Settlement do not include payment of any windfall of attorney's fees and costs to Class Counsel.

In fact, under a standard lodestar approach, Class Counsel incurred more attorney's fees and costs than what they will be actually receiving under the requested "percentage of the fund" approach. Moreover, both the initial Settlement Agreement and the Amended Settlement Agreement, contained no fee reversion. Instead, any amount of attorney's fees and costs not approved by the Court will be made available to the class. While the Defendant has agreed to not oppose Class Counsel's request for attorney's fees and costs, this "clear sailing" provision itself does not create any conflict with the class and is, in fact, quite common in class action settlements.

### e. Preliminary Approval of the Amended Settlement is Warranted

The Parties respectfully submit that these revisions adequately address the Court's concerns that were raised during the preliminary approval hearing on September 19, 2023. The Amended Settlement satisfies all criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure and the FLSA. Attached to this motion is the Declaration of Jordan Richards, Esq.— the Plaintiff's lead counsel. Exhibit "A" (referred to herein as (the "Richards Declaration.") Attached to the Richards Declaration is the Amended Stipulated Class Action Settlement Agreement and Release ("Amended Settlement Agreement"), the proposed Notice of Class Action Settlement ("Notice"), and qualifications of Mr. Richards, Mr. Miller, Mr. Logue, and Mr. Setcavage to serve as Class Counsel in this case. With this agreed motion, the Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the attached Amended Settlement Agreement; (2) certify the putative class and collective of Field Specialists for settlement purposes; (3) appoint the undersigned as Class Counsel; (4) preliminarily approve the class and collective settlement and proposed Notice, and direct its distribution to the class; and (5) approve the proposed schedule for final settlement approval, as outlined herein.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### a. Factual Allegations

306233430v.1

5

The Plaintiff worked for the Defendant as a Field Specialist in New Jersey from October 2018 through August 2020. Including the Plaintiff, there are approximately 75 former Field Specialists who worked for Defendant in the State of New Jersey from December 7, 2016, through June 9, 2023. *See* Exhibit A. The Plaintiff filed this class action lawsuit seeking to recover unpaid wages from the Defendant based on violations of the FLSA and NJWHL for failure to pay proper overtime wages to himself and other Field Specialists within the six-year period preceding the filing of the initial complaint. *See* ECF No. 1. The Plaintiff alleges that during periods of his employment, he and other Field Specialists were purportedly subject to automatic meal deductions regardless of whether any meal break was actually taken. The Plaintiff alleges that the Defendant is liable to him and a class of similarly situated Field Specialists for an amount equal to 1.5 times their regular hourly rate for all overtime hours that were unlawfully deducted. The Plaintiffs, on a collective basis, also allege that the Defendant violated the FLSA's provisions by failing to pay Field Specialists proper overtime wages for certain hours worked.

### b. Procedural History

The Plaintiff commenced this lawsuit on December 7, 2022, by filing a Class/Collective Action Complaint and demanding a jury trial take place in the Court of Common Pleas of Allegheny County. *See* ECF No. 1. On January 31, 2023, Defendant filed its Notice of Removal to this Honorable Court. *Id.* After a brief stipulation to extend deadlines, Defendant filed its Answer and Affirmative Defenses to the initial Complaint on February 23, 2023. *See* ECF No. 9. Thereafter, the Parties elected to participate in the early Alternative Dispute Resolution process and attended a mediation with Carola Katz, Esq. on June 9, 2023. *See* ECF No. 16. After a full day of negotiation, the Parties successfully reached a class-wide resolution. *See* ECF No. 23. The parties agreed to enter into a class-wide resolution (for settlement purposes only) to fully resolve the claims in this lawsuit and provide a common fund that will allow Field Specialists to participate in a claims

process and receive significant and meaningful compensation to be administered by a third-party claims administrator.

### c.  Discovery

Both Parties produced discovery in this case concerning the payroll records kept and maintained by Defendant during the relevant time period and the total number of weeks in which overtime hours were worked by Field Specialists. To date, hundreds of pages of documents have been exchanged by the Parties, including payroll reports, employee rosters, policies, and other relevant information concerning the claims alleged in this case. *See* Exhibit A. Plaintiff's counsel has conducted their own independent investigation into claims, including an independent evaluation of the number of Field Specialists employed by the Defendant in the State of New Jersey during the relevant time period. *See* Exhibit A. The Defendant provided verified information concerning the total number of weeks in which overtime hours were worked by the Field Specialists from December 7, 2016, through June 9, 2023. *Id.*

As discussed above, Plaintiff alleges Defendant's August 23, 2019 Meal and Rest Break Policy resulted in unlawful automatic meal deductions.  From August 23, 2019 through June 9, 2023, there were a total of 1,206 workweeks in which Field Specialists worked over 38 hours. The Plaintiff has been given an opportunity to review and evaluate the Defendant's corporate policies, payroll records, employee rosters, internal records pertaining to shifts worked by the Field Specialists and work schedules. In addition, Plaintiff's counsel conducted an extensive interview with the Plaintiff concerning the veracity of these documents and comparing the documentation to information kept and maintained by the Plaintiff during the course of his employment. *See* Exhibit A.

### d.  Settlement Negotiations

On June 9, 2023, the Parties attended a Zoom mediation with Mediator Katz. *See* ECF No. 16. During that mediation, Ms. Katz and the Parties were able to make progress concerning the scope and viability of certain claims in this case. Following mediation, the Parties executed a memorandum of understanding concerning material terms and conditions of the settlement. *See* Exhibit A. To date, the Parties have engaged in hours of negotiations in this case including those spent before and during mediation; extensive discovery materials including those eliciting the size of the class, the total number of hours worked by members of the class and the relevant time period were exchanged.

The Parties reduced their agreement to a formal Stipulation of Class Action Settlement Agreement and Release, which they presented to the Court for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Following the preliminary approval hearing on September 19, 2023, the Parties continued to confer and ultimately revised the terms of the agreement to address and alleviate concerns raised by the Court. The Parties have now executed an Amended Stipulation of Class Action Settlement Agreement to present to the Court. *See* Amended Settlement Agreement attached as Exhibit A.

## III.    <u>SUMMARY OF THE SETTLEMENT TERMS</u>

### a.  The Settlement Fund

The Defendant has agreed to create a settlement fund of up to $110,000.00 (hereinafter "the Fund"). *See* Settlement Agreement attached to Exhibit A. The Fund will cover awards to class members, Court-approved attorney's fees and costs, Court-approved service award payment to the Plaintiff and for entering a general release of claims with the Defendant, and the costs of administering the settlement. *Id.*

### b.  Release

The Class Members who do not "opt-out" of the settlement will release all wage-and-hour claims against Defendant, except claims under the FLSA. *Id*. Any individual who submits a claims form will also release any and all claims arising under the FLSA. *Id*.

### c.  Eligible Class Members

The Rule 23 class consists of approximately 75 current and former Field Specialists who worked for the Defendant between December 7, 2016, and June 9, 2023, and who: (i) were regularly assigned to a warehouse located within New Jersey during that period; (ii) have not previously released wage-and-hour claims against Peloton; (iii) have not agreed with Peloton to a forum-selection clause requiring litigation outside New Jersey; and (iv) have not agreed to arbitrate any unreleased claims. *Id*.

### d.  Allocation Formula

Class members who timely submit claim forms (through a "claims-made" process) will be paid pursuant to a "point system" allocation formula based on the number of weeks they worked more than 38 hours for Defendant during the Relevant Time Period. *Id*. As a threshold matter, the Settlement Administrator will allocate $25 to each Settlement Class Member as a guarantee minimum distribution regardless of when they worked within the Relevant Time Period. *See* Exhibit A. Next, the Settlement Administrator will calculate each Settlement Class Member's actual weeks worked more than 38 hours as a Field Specialist in New Jersey during the period of August 19, 2019, to June 9, 2023. It shall allocate three "points" for each of these weeks. *Id*. Then, the Settlement Administrator shall calculate each Settlement Class Member's actual weeks worked more than 38 hours as a Field Specialist in New Jersey during the period of August 27, 2018, through August 18, 2019. It shall allocate one "point" for each of these weeks. *Id*. The remainder of the Net Settlement Fund (after the maximum $25 allocations are paid) shall be allocated in

9

Settlement Payments to the Settlement Class Members on a pro rata basis according to the number of "points" calculated.

Courts within the Third Circuit have frequently upheld this type of claims-made process finding it "perfectly appropriate to require Class members to submit certain information proving that they are entitled to collect relief awarded in this case." *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 at *6 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011). ("There is nothing inherently suspect about requiring class members to submit claims forms in order to receive payment") *Jackson v. Wells Fargo Bank*, 136 F. Supp 3d 687, 708-9 (W.D. Pa. 2015) (*quoting Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Illinois, Eastern Division, 2011). In this case, a claims-made process would not prejudice any potential Class Members or the Defendant.

Per Internal Revenue Service (IRS) regulations, a Form W-2 shall be issued by the Defendant to the Plaintiff and to each Class Member pursuant to the settlement terms. Exhibit A. Pursuant to the allocation formula, Class Members will receive a guaranteed minimum distribution of $25 regardless of when they worked for Defendant in the Relevant Time Period, and certain Class Members may receive greater amounts based on the above settlement payment formula. *See* Settlement Agreement.

**e.  Attorney's Fees and Litigation Costs**

The Plaintiff's counsel will apply for approximately $36,666.66 to be paid from the Fund as attorney's fees and reimbursable costs as well in the amount of $3,345.50, for a grand total of $40,012.16.[1] The Plaintiff's counsel will file a formal motion for approval of fees and costs along

---

[1] This is within the range of a typical fee award in a common fund case. *See, e.g., Galt v. Eagleville Hospital*, 310 F. Supp 3d 483, 498 (E.D. Pa., 2018)(fee awards in common fund cases range from 19 to 45%.); *In Re General Instrument Sec. Litigation*, 209 F. Supp 2d 423, 433 (E.D. Pa. 2001) ("no general rule as to what percentage is appropriate;" citing progeny of cases where one-third fee was awarded); *Esslinger v. HSBC Bank Nevada, N.A.*, 2012 WL 5866074 at *14 (E.D.

with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2). The Settlement Agreement is not conditioned on the award of attorney's fees, and explicitly states that it is to be considered separately from any application for attorney's fees. *See* Exhibit A. Moreover, the Amended Settlement Agreement **does not** contain a clause requiring unapproved fees and costs to revert to Defendant. Any unapproved fees and costs will be re-allocated to the Net Settlement amount to be apportioned to the class members. It is worth noting that the Court need not decide the attorney's fees and costs at this time.

### f. Consideration for the Plaintiff's Service Award and Mutual General Release

In addition to his award under the allocation formula as a member of the putative class, counsel proposes that the Plaintiff will also receive payment in the amount of $15,000.00 as a service award and for a general release of claims. *See* Exhibit A, at Ex. 1. The Plaintiff spent days of his life assisting the Class Members' discovery, negotiation and resolution of this matter. Furthermore, service awards are not uncommon and separate consideration paid to a class representative from the common fund in exchange for executing a general release is permissible under a Rule 23 analysis. *See, e.g., Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 496 (E.D. Pa. 2016) (Approving compensation for class representatives for services they provide, risks they incur and as a reward for the benefit to the class and public at large) (*See Bredbenner*, 2011 WL 1344745, at *22 (*citing Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011).

**CLASS ACTION SETTLEMENT PROCEDURE**

---

Pa. Nov. 20, 2012) (finding that in private contingency fee cases, lawyers routinely negotiate agreements for 30-40%, thus finding an award of fees for 30% "squarely within that range.")

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

> 1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;
>
> 2.    Dissemination of mailed, e-mailed, and/or published notice of settlement to all affected class members; and
>
> 3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlements may be presented.

*See* Fed. R. Civ. P. 23(e); *See also,* § 13:1 Class action settlements, 4 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.); MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 (2004). Following the aforementioned process is essential to safeguard Class Members' procedural due process rights and enable the Court to fulfill its role as the guardian of class interests.

Within this motion, the Plaintiff respectfully requests that the Court take the first step—grant preliminary approval of the Settlement Agreement and approve the proposed Notice and authorize the claims administrator to send the approved Notice. The parties respectfully propose for the Court's approval of the following schedule for final resolution of this matter:

> 1.    Within 14 calendar days of the Court granting preliminary approval, the Defendant will provide the third-party claims administrator with the full legal names and contact information for all class members. *See* Settlement Agreement, Exhibit A.
>
> 2.    Within 14 calendar days thereafter, the third-party claims administrator will mail and/or e-mail the Notice to class members at their last known address. *See Id.*
>
> 3.    Class members will have 45 calendar days after the date the Notice is mailed to opt out or object to the settlement ("Notice Period"). *Id.*
>
> 4.    A final fairness hearing will be held as soon as is convenient for the Court.
>
> 5.    The Plaintiff will file a Motion for Final Settlement Approval no later than 14 days before the fairness hearing.

6.      The Plaintiff will contemporaneously file a Motion for Approval of Attorney's Fees and Costs when the Motion for Final Settlement Approval is filed.

7.      After the fairness hearing, if the Court grants the Plaintiff's Motion for Final Settlement Approval, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the "effective date" of the settlement will be 30 days after the Court enters its Final Order and Judgment. *See Id.*

8.      If an individual or party appeals the Court's Final Order and Judgment, the "effective date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired. *Id.*

9.      The third-party claims administrator shall pay the total amount of the Class Counsel's fees and the costs to Class Counsel in one payment. The Payment shall be made by no later than thirty (30) days after the effective date. *Id.*

10.      The third-party claims administrator will pay qualified Class Members their portion of the Net Settlement Fund, as described in the Settlement Agreement in two equal payments. The First Payment shall be made within thirty (30) calendar days after the effective date and will be subject to applicable withholding. *Id.* The Second Payment shall be made within thirty (30) calendar days after the effective date and will represent non-wage consideration. *Id.*

11.      Amounts allocated to any Class Member who does not make a valid claim, or who elects to opt-out of the settlement, shall be retained by and remain the property of the Defendant.[2] *Id.*

### a.  Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23

Before a settlement may be approved, a number of prerequisites must be established. First, the Court must conditionally certify the settlement class. Fed. R. Civ. P. 23(c); 1 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.). Second, if the class is conditionally certified, notice must be sent to the class and Class Members must be given opportunity to object or "opt-out" of

---

[2] Claims-made class action settlements are frequently approved. *See In Re All-Clad Metal Crafters LLC Cookware Marketing & Sales Practice Litigation*, 2023 WL 2071481 at *7 (W.D. Pa. Feb 17, 2023) (approving, over objections, claims-made settlement where unclaimed funds reverted to the defendants); *See also*: *Taha v. Bucks County Pennsylvania*, 2020 WL 7024238 at *10 (E.D. Pa. 2020) (approving claims-made settlement).

settlement. *See Id.* Third and finally, the Court must determine preliminarily whether the settlement is "fair and reasonable." Fed. R. Civ. P. 23(e)(1) & (e)(2); *See also*: *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *In re Nat'l Football League Players' Concussion Injury Litig.*, MDL 2323, 2014 WL 114351 (E.D. Pa. Jan. 14, 2014) (at preliminary approval stage, the standard of "fair, reasonable and adequate…is lowered"). The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *In re Nat'l Football League*, at *5; *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa 2000) (citing factors established in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). In addition to being substantively reasonable, the proposed settlement must be "the result of good faith, arms-length negotiations." *Id.*

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. *See, e.g.*, 1 Newberg and Rubenstein on Class Actions § 13:1 (6th ed.). Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). *See Id.* Settlement agreements are highly favored in the law, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir. 1995). In the instant matter, the settlement class satisfies the prerequisites of Rule 23(a) & (b)(3) as detailed below.

### i. **Numerosity**

The Third Circuit has explained that although no minimum number of plaintiffs is required to maintain a suit as a class action, a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s requirements of "numerosity" such that joinder is "impracticable" when the potential

number of Plaintiffs exceeds 40. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018). Here, there are approximately 75 members of the proposed settlement class of Field Specialists in New Jersey For a variety of reasons, joinder of the 75 Plaintiffs is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met.

### ii. Commonality

The threshold for commonality under Rule 23(a)(2) is not high. Commonality requires that class members "share at least one question of fact or law in common with each other."*Reinig v. RBS Citizens, N.A.,* 912 F.3d 115, 127 (3d Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)); *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (the common contention must be capable of class-wide resolution and truth or falsity of that contention will validate or invalidate all claims.)

Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendant's class-wide pay policies and practices relating to whether automatic meal deductions reduced the amount of overtime wages paid to Field Specialists in weeks in which they worked over 40 hours—an issue that is common to the entire Settlement Class.

### iii. Typicality

Rule 23(a)(3) asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The requirement is satisfied when a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Calhoun v. Invention Submission Corp.*, No. 2:19-CV-01396, 2023 WL 2411354, at *7 (W.D. Pa. Mar. 8, 2023) (*citing In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).

The Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendant, arise from the same

legal theories, and allege the same type of harm and entitlement to relief. Thus, Rule 23(a)(3)'s typicality requirement is satisfied.

### iv. Adequacy

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the class representative and the settlement class.  The Plaintiff Joshua Mittwol has retained competent counsel to represent him and the settlement class. The Plaintiff's selected class counsel regularly engages in complex wage and hour class and collective action litigation in several states across the country and other complex litigation similar to the present litigation and have dedicated substantial resources to the prosecution of this action. *See* Exhibit A. Class counsel has previously been named adequate class counsel in similar wage and hour class action cases. *Id.; see, also, Windheim, et. al. v. Tipsy Joe Corp.*, S.D. Fla. Case No. 0:22-cv-60278-CMA at D.E. 55 (Judge Altonaga granting final approval of Rule 23 class settlement and naming Mr. Richards class counsel); *see, also, Sparks, et. al. v. Kyodai Sushi Rock Café, Inc., et. al.*, Clay County Circuit Court Case No. 2022CA001268 (Feb. 2, 2023) (granting preliminary approval of class action wage and hour restaurant claims and naming Mr. Richards class counsel); *Laughlin, et. al. v. Fresh-Mex & Co. Corp., et. al.*, Duval County Circuit Court Case No. 16-2023-CA-1249 (Mar. 14, 2023) (granting preliminary approval of class action wage and hour restaurant claims and naming Mr. Richards class counsel); *Conrey, et. al. v. Beach Boys of Ft. Lauderdale, LLC*, S.D. Fla. Case No. 0:22-cv-60843-HUNT (Judge Hunt granting conditional certification of FLSA collective action and naming Mr. Richards counsel for FLSA

collective comprised of Servers and Bartenders). Further information concerning Class Counsel's credentials can be found in the Richards Declaration attached hereto. *Id.*

Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the litigation, conducted extensive discovery and have obtained a resolution that benefits all members of the putative class. *See Esslinger v. HSBC Bank Vevada, N.A.*, 2012 WL 5866074, at *8 (E.D. Pa. 2012) (approving settlement without formal discovery.)

### v. Predominance and Superiority

With respect to predominance, Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (*quoting In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008)). Here, the predominance requirement is satisfied for settlement purposes because Defendant's conduct was common to all of the class members and all of the class members were harmed by Defendant's conduct. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). The common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 75 settlement Class Members in a single, coordinated proceeding is superior to 75 individual lawsuits addressing the same legal and factual issues.

In sum, all of Rule 23's requirements are met for the purposes of certifying the proposed settlement class. Similarly, for the foregoing reasons, the settlement Class Members are similarly situated under the FLSA. Indeed, "the 'similarly situated' requirement for conditional certification is substantially less stringent than the Rule 23(b)(3) predominance requirement."" *Garcia v. Vertical Screen, Inc.*, No. 18-cv-4718, 2022 WL 282541, at *7 (E.D. Pa. Jan. 31, 2022). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Smith v. Merck &*

*Co.*, No. 13-cv-2970, 2019 WL 3281609, at *5 n.5 (D.N.J. July 17, 2019). Thus, this Honorable Court should preliminarily certify this settlement class and collective under Rule 23 and the FLSA for settlement purposes only.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action lawsuits. *See, e.g., Calhoun v. Invention Submission Corp.*, No. 2:19-CV-01396, 2023 WL 2411354, at *7 (W.D. Pa. Mar. 8, 2023) (*citing In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir. 1995); 4 Newberg and Rubenstein on Class Actions § 13:1("There is…a 'strong judicial policy in favor of class action settlement") (*citing: Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)). At the preliminary approval stage, the Court's task is to evaluate whether settlement is "fair, reasonable and adequate" using two procedural and two substantive factors. *Id.* at § 13:13. To assist the Court in its evaluation of substantive factors, they must determine whether: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir. 1995).

### a. Procedural factors

The primary procedural factor is whether the agreement arose out of an arms-length, non-collusive negotiation. *Id.* at § 13:14 Although courts can look to procedural posture of the case at settlement for indications that the agreement is legitimate, it may consider collusion less likely when settlement negotiations are conducted by a third-party mediator, as is the case *sub judice*. *See Id; See also: Udeen v. Subaru of America, Inc.* 2019 WL 4894568, *2 (D.N.J. 2019). Similarly, there has been a sufficient amount of discovery in this case to remove any doubt(s) about fair settlement negotiations;

in the instant case, very thorough discovery was produced and was discussed in front of the third party neutral. *See Id.* at § 13:14.

"The procedural factors ask whether 'the class representatives and class counsel have adequately represented the class [and whether] the proposal was negotiated at arm's length.'" *Id.* at § 13:15. This brief contains a lengthy recitation of lead class counsel's experience and results in class action litigation and requests for preliminary approval. *See:* Agreed Motion for Preliminary Approval at (IV)(a)(iv).

### b.  Substantive factors

A proposed settlement should be preliminarily approved if it is establishes an "initial presumption of fairness." *Basile v. Stream Energy Pennsylvania, LLC*, 2018 WL 2441363, at *2 (M.D. Pa. 2018); 4 Newberg and Rubenstein on Class Actions § 13:13 (preliminary approval test created using *Manual for Complex Litigation* calling for approval if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range for judicial approval"). *See also: In re Nat'l Football League Players Concussion Inj. Litig.*, 961 F. Supp. 2d 708 (E.D. Pa. 2014) (it is the parties responsibility to supplement the Court's record and provide it with information necessary to evaluate fairness and/or adequacy of proposed settlement.). The substantive factors are an analysis of the adequacy of the class's relief and the equity of its distribution across the class. 4 Newberg and Rubenstein on Class Actions § 13:15 (*citing* Fed. R. Civ. P. 23(e)(2)).

In the instant action, the proposed settlement figure was reached through use of a third-party neutral, raising no question that it was reached using substantively fair methods.

### i.    The Settlement is Fair, Reasonable, and Adequate

The test for whether a proposed settlement is fair, reasonable, and adequate is done using several factors outlined in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). In fact, this Honorable Court has engaged in such analysis. *See Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007, 2019 WL 5394751 (W.D. Pa. Oct 22, 2019.) The nine factors in *Girsh* are:

> (1) The complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, at 157 (internal quotation and ellipses omitted).

Portions of the various factors outlined in *Girsh* are discussed *supra*. For instance, the relative complexity, large expense and likely lengthy duration of this case given the fact that there are 75 potential Class Members. Counsel expects the reaction of the class to this settlement to be positive given the Defendant's agreement to reimburse for time allegedly lost over the course of the Class Members' employment.

As discussed herein, discovery in the matter so far has been fairly extensive and revealed enough information to make an informed settlement agreement through a third-party mediator. There are significant risks to the Class Members in establishing liability, as the Defendant has importantly not conceded to being liable and Class Members would be forced to prove the allegations within their Amended Complaint to survive a potential summary judgment motion and/or make it to trial. Furthermore and most importantly, the settlement value proposed is very reasonable given the relative size of the class and number of hours discovered to fall within the applicable time periods. It is the opinion of the Parties that settlement at this stage would therefore be more reasonable than continuing with what would be costly and lengthy litigation.

306233430v.1

## V.    **PROPOSED NOTICE**

The contents of the proposed Notice, which is attached to the Richards Declaration vis-à-vis the Amended Stipulated Class Action Settlement Agreement, fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. *See* Exhibit A. The Notice also explains the revised allocation formula, the basis on which each Class Member's award was determined, and the allocation of attorney's fees and costs, and provides specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. This information is adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Claims Administrator, ILYM Group, will mail the Notices to the last known address of each class member within 28 calendar days of the Court's preliminary approval order. *See* Exhibit A. The Claims Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom notices are returned as undeliverable. *Id.* If unable to successfully deliver Notice via U.S. Mail to any Class Member the Claims Administrator will e-mail the notice. *Id.* Class Members will have forty-five (45) calendar days to opt out of or object to the settlement. *Id.* Within thirty (30) calendar days of the Effective Date of the settlement, the Claims Administrator will mail Class Members their Payments. *Id.*

## VI.    THE AMENDED SETTLEMENT AGREEMENT CONFORMS WITH RECENT RULINGS FROM THE THIRD CIRCUIT COURT OF APPEALS

On November 2, 2023, the Third Circuit Court of Appeals examined the reasonableness of attorney's fees and costs awarded to class counsel in a Rule 23 class settlement. *See, e.g., In Re Wawa, Inc. Data Security Litigation,* 2023 WL 7210345 at *1 (3d Cir. Nov. 2, 2023). In *In re Wawa, Inc. Data Security Litigation,* the district court overruled objections concerning the reasonableness of attorney's fees and costs awarded to class counsel in a Rule 23 class settlement and ultimately granted final approval. *Id.* The district court approved class counsel's request for an award of 25% of a "constructive common fund" in the amount of $3.2 million for attorney's fees, costs, and litigation expenses even though the parties had included a "clear sailing" provision and a "fee reversion" provision in the settlement. *Id.*

On appeal, the Third Circuit reversed the lower court, and expressed concern over the "clear sailing" provision in the class settlement agreement which allowed class counsel to petition the district court for a percentage of the class fund as payment for attorney's fees and costs with no objection from the defendant. *Id.* The Third Circuit noted that while the existence of this "clear sailing" provision is often common and "not an automatic bar to settlement approval," it nevertheless "deserves careful scrutiny" when calculating a reasonable fee award. *Id.* The Court expressed particular concern on this issue because the parties also included a "fee reversion" in the settlement agreement whereby any attorney's fees not approved by the Court would revert back to the defendant:

> It is a bewildering proviso: why would class counsel agree to give part of the common fund they secured to the *defendant* instead of their clients? The unfortunate conclusion is that class counsel asks for it as a "gimmick for defeating objectors." *Pearson,* 772 F.3d at 786. A trick that strips class members of their standing to challenge the fee award, because "any action taken by the court would not redress the class member's purported injury." *Briseno,* 998 F.3d at 1027. And when

> combined with a clear sailing clause, in which the defendant does not object to the
> fee award, any action under 23(h) is foreclosed. *Id.*

2023 WL 7210345 at *10.

Here, the Amended Class Settlement reached does not trigger any of the concerns raised by the Third Circuit in *In Re Wawa, Inc. Data Security Litigation.* As a procedural matter, the Court is not required to address the fee issue at preliminary approval and is permitted to reserve ruling on the fee matter until after the Notice period expires when Class Counsel files its motion for an award of fees/costs. Even if the Court considers this issue now, neither the initial Class Settlement Agreement, nor the Amended Class Settlement Agreement, contains a "fee reversion." *See* Exhibit A; *see, also,* ECF No. 28-1. This is a crucial factor for the Court to consider. While the Defendant agrees to not oppose Class Counsel's request for a percentage of the fund to be paid as attorney's fees and costs, the existence of this "clear sailing" provision does not automatically bar preliminary approval of the settlement. *In Re Wawa, Inc. Data Security Litigation,* 2023 WL 7210345 at *9. Furthermore, the "process and substance of the settlement … does not indicate any collusion." *Id.*

The following additional factors indicate that there has been no collusion concerning the request for an award of attorney's fees and costs in this case:

   a) An independent and neutral mediator assisted in arms-length negotiations;

   b) The amount of attorney's fees and costs sought by virtue of the "percentage of the common fund" approach is significantly less than what class counsel has actually incurred in this case in zealously representing the interests of Plaintiff and the Class;

   c) Class Counsel has put Plaintiff and the Class's interests above their own by requesting a method of compensation which yields a smaller recovery for Class Counsel than what was actually

incurred in this case, thus providing more compensation for the Class; and

d)   There is no fee reversion in the original or Amended Cass Action Settlement Agreement.

Collectively, these factors indicate that there is no evidence of collusion in this case.

## VII.   <u>CONCLUSION</u>

For the reasons set forth above, the Plaintiff respectfully requests that the Court preliminarily approve the amended settlement, conditionally certify the settlement class, appoint Plaintiff's counsel, USA Employment Lawyers – Jordan Richards PLLC, Jordan Richards, Esq., Michael Miller, Esq. and Quinn Logue, Matthew Logue, Esq., and Tyler Setcavage, Esq., as Class Counsel, approve the Settlement Notice, and enter the Proposed Order attached hereto.

Plaintiff, JOSHUA MITTWOL, now moves this Court to certify the following class of similarly situated Field Specialists:

**All Field Specialists who worked for Peloton Interactive, Inc. between December 7, 2016, and June 9, 2023, and who: (i) were regularly assigned to a warehouse located within New Jersey during that period; (ii) have not previously released wage-and-hour claims against Peloton; (iii) have not agreed with Peloton to a forum-selection clause requiring litigation outside New Jersey; and (iv) have not agreed to arbitrate any unreleased claims.**

Plaintiff further requests that the Court enter an order consistent with the Proposed Preliminary Order attached hereto and grant the full relief sought within this agreed Motion.

Respectfully Submitted,

QUINN LOGUE LLC

/s/ *Tyler S. Setcavage*
Tyler S. Setcavage, Esquire

Pa. ID No. 322867
Matthew T. Logue, Esquire
Pa. ID No. 87416

200 First Avenue, Third Floor
Pittsburgh, Pennsylvania 15222

USA EMPLOYMENT LAWYERS –
JORDAN RICHARDS PLLC

*/s/ Jordan Richards*
Jordan Richards, Esquire
Florida Bar No. 108372
New York Bar No. 5859095
Michael Miller, Esquire
Florida Bar No. 0064005
New Jersey Bar No. 0057-2009
*Pro Hac Vice*

1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF CONFERENCE

Pursuant to the local rules, prior to the filing of the instant motion, the Parties conferred and agree as to the relief sought herein.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 30th day of November 2023 and served on the counsel listed below.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST

JACOB OSLICK, ESQ.
PA Bar No. 311028
joslick@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Ave. 32nd Floor
New York, NY 10018-1405
Tel: (212) 218-5500
Fax: (212) 218-5526
*Counsel for Defendant*

MATTHEW LOGUE, ESQ.
matt@quinnlogue.com
TYLER SETCAVAGE, ESQ.
tyler@quinnlogue.com
QUINN LOGUE LLC
200 First Ave. Third Floor
Pittsburgh, PA 15222
*Counsel for Plaintiffs*