IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA MITTWOL, on behalf of himself and all others similarly situated, | Civil Action No. 23-00156 |
| Plaintiff, | Chief Judge Mark R. Hornak |
| v. | **ELECTRONICALLY FILED** |
| PELOTON INTERACTIVE, INC., | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, JOSHUA MITTWOL ("Plaintiff"), hereby files this Motion for Final Approval of Class Settlement and Memorandum of Law in Support, as follows:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant, PELOTON INTERACTIVE, INC. ("Defendant"), operates in several states throughout the country in which it sells and delivers branded exercise equipment. *See* ECF No. 27 at 27. Defendant has employed Field Specialists, like the Plaintiff, to deliver Peloton devices to its customers and otherwise assist with the installation of these devices. *Id.* at 28. The Plaintiff alleges that, during periods within the past 6 years, Defendant employed him and other Field Specialists (hereinafter "Field Specialists") and enforced an automatic meal deduction policy which removed hours worked in a workweek regardless of whether meal breaks were taken by the Field Specialists. The Plaintiff alleges that this policy was enforced throughout New Jersey and resulted in violations of the overtime provisions of the New Jersey Wage and Hour Law ("NJWHL") and Fair Labor Standards Act ("FLSA") whenever Field Specialists worked in excess of forty (40) hours in a workweek. *Id.* The Plaintiff alleges that a class of similarly situated Field Specialists suffered

damages under the NJWHL and that class certification is therefore appropriate under Fed. R. Civ. P. 23.

In June 2023, the Parties participated in a lengthy mediation with the assistance of respected mediator Carole Katz, Esq. and ultimately reached material terms on a class settlement. On November 30, 2023, the Plaintiff filed his Amended[1] and Agreed Motion for Preliminary Approval of Class Settlement; Conditional Certification of the Settlement Class; Appointment of Plaintiff's Counsel as Class Counsel; Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure; and Memorandum of Law in Support. *See* ECF No. 37. On January 9, 2024, the Court entered its Order of Preliminary Approval Granting Amended Motion at ECF No. 37. *See* ECF No. 45 (hereinafter "Preliminary Approval Order").

The Preliminary Approval Order conditionally certified the following Settlement Class under Rule 23 of the Federal Rules of Civil Procedure:

> **All Field Specialists who worked for Peloton Interactive, Inc. between December 7, 2016, and June 9, 2023, and who: (i) were regularly assigned to a warehouse located within New Jersey during that period; (ii) have not previously released wage-and-hour claims against Peloton; (iii) have not agreed with Peloton to a forum-selection clause requiring litigation outside New Jersey; and (iv) have not agreed to arbitrate any unreleased claim.**

*See* ECF No. 37, ¶5(a).

---

[1] On August 21, 2023, Plaintiff filed his initial Agreed Motion for Preliminary Approval of Class Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure and Memorandum of Law in Support. *See* ECF No. 28. On September 19, 2023, the Court held a hearing on the initial Motion for Preliminary Approval and raised several issues for the Parties to address. *See* ECF No. 29; ECF No. 30. During the hearing, the parties agreed to amend certain terms of the settlement to address these issues raised by the Court. The Amended Motion for Preliminary Approval addressed and cured issues raised by the Court. *See* ECF No. 37.

The Preliminary Approval Order also certified a collective action for notice purposes under the Fair Labor Standards Act ("FLSA"), consisting of all members of the Settlement Class who submit a Claim Form. *Id.* at ¶5(b). The Court named Plaintiff, JOSHUA MITTWOL ("Plaintiff") the Class Representative, and appointed attorneys Jordan Richards, Michael Miller, Matthew Logue, and Tyler Setcavage as Class Counsel. *Id.* at ¶7. Finally, the Court appointed ILYM Group, Inc. as Settlement Administrator, and directed the Settlement Administrator to disseminate a Court-approved notice to the Settlement Class via U.S. Mail as set forth within the Settlement Agreement and supervise and oversee the administration of the Settlement. *Id.* at ¶¶9-10. The Preliminary Approval Order provided the Settlement Class the opportunity to exclude themselves or otherwise object to the settlement by no later than April 24, 2024. *Id.* at ¶15.

The Settlement Administrator has completed all aspects of the Notice procedure as required by the Preliminary Approval Order. *See* Declaration of Nicole Bench attached as **Ex. A** (hereinafter "the Bench Declaration"). The Settlement Administrator successfully delivered a Notice Packet to every single one of the 75 Settlement Class Members. *See* **Ex. A**, ¶¶8-10. A total of 30 Settlement Class Members submitted a timely Claim Form. *See* **Ex. A**, ¶14. Not a single Class Member opted-out of the settlement. **Ex. A**, ¶11. This results in a 40% participation rate amongst the Settlement Class. *Id.* at ¶14. Moreover, not a single objection or dispute has been asserted by any member of the Settlement Class. *Id.* at ¶12. The average individual settlement payment is approximately $1,634.59 and the highest individual settlement payment is approximately $8,201.43. *Id.* at ¶17. As set forth fully below, the Plaintiff now respectfully requests that the Court enter a Final Approval Order, which: (a) finds that the applicable prerequisites for settlement class action treatment under Rule 23 have been met; (b) finds that the settlement is fair, reasonable, adequate, and made in good faith; (c) prohibits Settlement Class Members from further pursuing any Released Claims as set forth in the Settlement Agreement; (d) approves Class Counsel's request

for a Fee Award; (e) permits the Settlement Administrator to distribute the Settlement Fund pursuant to the Settlement Agreement; (f) approves an Incentive Award to be paid to the Class Representative; and (g) approves payment to ILYM Group, Inc. for services performed as Claims Administrator in the amount of $5,950.00.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### a. Factual Allegations

The Plaintiff worked for the Defendant as a Field Specialist in New Jersey from October 2018 through August 2020. Including the Plaintiff, there are 75 former Field Specialists of Defendant within the class definition set forth above. *See* Exhibit A. The Plaintiff filed this class action lawsuit seeking to recover unpaid wages from the Defendant based on violations of the FLSA and NJWHL for failure to pay proper overtime wages to himself and other Field Specialists within the six-year period preceding the filing of the initial complaint. *See* ECF No. 1. The Plaintiff alleges that during periods of his employment, he and other Field Specialists were purportedly subject to automatic meal deductions regardless of whether any meal break was actually taken. The Plaintiff alleges that the Defendant is liable to him and a class of similarly situated Field Specialists for an amount equal to 1.5 times their regular hourly rate for all overtime hours that were unlawfully deducted. The Plaintiffs, on a collective basis, also allege that the Defendant violated the FLSA's provisions by failing to pay Field Specialists proper overtime wages for certain hours worked.

### b. Procedural History

The Plaintiff commenced this lawsuit on December 7, 2022, by filing a Class/Collective Action Complaint and demanding a jury trial take place in the Court of Common Pleas of Allegheny County. *See* ECF No. 1. On January 31, 2023, Defendant filed its Notice of Removal to this Honorable Court. *Id.* After a brief stipulation to extend deadlines, Defendant filed its Answer and Affirmative Defenses to the initial Complaint on February 23, 2023. *See* ECF No. 9.

Thereafter, the Parties elected to participate in the early Alternative Dispute Resolution process and attended a mediation with Carole Katz, Esq. on June 9, 2023. *See* ECF No. 16. After a full day of negotiation, the Parties successfully reached a class-wide resolution. *See* ECF No. 23. The parties agreed to enter into a class-wide resolution (for settlement purposes only) to fully resolve the claims in this lawsuit and provide a common fund that will allow Field Specialists to participate in a claims process and receive significant and meaningful compensation to be administered by a third-party claims administrator.

### c. Discovery

Both Parties produced discovery in this case concerning the payroll records kept and maintained by Defendant during the relevant time period and the total number of weeks in which overtime hours were worked by Field Specialists. To date, hundreds of pages of documents have been exchanged by the Parties, including payroll reports, employee rosters, policies, and other relevant information concerning the claims alleged in this case. *See* Exhibit A. Plaintiff's counsel has conducted their own independent investigation into claims, including an independent evaluation of the number of Field Specialists employed by the Defendant in the State of New Jersey during the relevant time period. *See* Exhibit A. The Defendant provided verified information concerning the total number of weeks in which overtime hours were worked by the Field Specialists from December 7, 2016, through June 9, 2023. *Id.*

As discussed above, Plaintiff alleges Defendant's August 23, 2019, Meal and Rest Break Policy resulted in unlawful automatic meal deductions. From August 23, 2019, through June 9, 2023, there were approximately 1,206 workweeks in which Field Specialists worked over 38 hours. The Plaintiff has been given an opportunity to review and evaluate the Defendant's corporate policies, payroll records, employee rosters, internal records pertaining to shifts worked by the Field Specialists and work schedules. In addition, Plaintiff's counsel conducted an extensive interview

with the Plaintiff concerning the veracity of these documents and comparing the documentation to information kept and maintained by the Plaintiff during the course of his employment. *See* Exhibit A.

### d.  Settlement Negotiations

On June 9, 2023, the Parties attended a Zoom mediation with Mediator Katz. *See* ECF No. 16. During that mediation, Ms. Katz and the Parties were able to make progress concerning the scope and viability of certain claims in this case. Following mediation, the Parties executed a memorandum of understanding concerning material terms and conditions of the settlement. *See* Exhibit A. To date, the Parties have engaged in hours of negotiations in this case including those spent before and during mediation; extensive discovery materials including those eliciting the size of the class, the total number of hours worked by members of the class and the relevant time period were exchanged.

The Parties reduced their agreement to a formal Stipulation of Class Action Settlement Agreement and Release, which they presented to the Court for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Following the preliminary approval hearing on September 19, 2023, the Parties continued to confer and ultimately revised the terms of the agreement to address and alleviate concerns raised by the Court. The Parties executed an Amended Stipulation of Class Action Settlement Agreement which they presented to the Court. *See* Amended Settlement Agreement at ECF No. 37-1. The Court entered its Order of Preliminary Approval on January 9, 2024. *See* ECF No. 45.

## III.   <u>MEMORANDUM OF LAW</u>

"A court presented with a joint request for approval of a class certification and settlement must separate its analysis of the class certification from its determination that the settlement is fair."

*See, e.g., Rossini v. PNC Financial Services Grp., Inc.,* 2020 WL 3481458 at * (W.D. Pa. June 26, 2020) (Ranjan, J.) *quoting Serrano v. Sterling Testing Sys., Inc.,* 711 F.Supp.2d 402, 410 (E.D. Pa. 2010).

### a. <u>Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23</u>

"Before a class action can be settled, the settlement must first be approved by the court, but only after the court holds a hearing and finds that the settlement is "fair, reasonable, and adequate." *See, e.g., In re Phillips Recalled CPAP, Bi-Level CPAP, and Mechanical Ventilator Products Litig.,* 2024 WL 1810190 at *1 (W.D. Pa. Apr. 25, 2024) *citing* Fed. R. Civ. P. 23(e)(2). As part of this undertaking, the court must: "(1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e)." *Id. citing Sorace v. Wells Fargo Bank, N.A.,* 2024 WL 643229 at *2 (E.D. Pa. Feb. 15, 2024) *citing In re NFL Players Concussion Inj. Litig.,* 775 F.3d 570, 581 (3d Cir. 2014). Certification specifically requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). In the instant matter, the settlement class satisfies the prerequisites of Rule 23(a) & (b)(3) as detailed below.

### i. <u>Numerosity</u>

The Third Circuit has explained that although no minimum number of plaintiffs is required to maintain a suit as a class action, a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s requirements of "numerosity" such that joinder is "impracticable" when the potential number of Plaintiffs exceeds 40. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018). Here, there are 75 members of the proposed settlement class of Field Specialists in New Jersey. For a variety of reasons, joinder of the 75 Plaintiffs is impracticable. Thus, the Rule 23(a)(1) numerosity requirement is met.

### ii. <u>Commonality</u>

The threshold for commonality under Rule 23(a)(2) is not high. Commonality requires that class members "share at least one question of fact or law in common with each other."*Reinig v. RBS Citizens, N.A.,* 912 F.3d 115, 127 (3d Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)); *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (the common contention must be capable of class-wide resolution and truth or falsity of that contention will validate or invalidate all claims). "The focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead 'is on whether the defendant's conduct was common as to all of the class members.'" *In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Litig.,* 2024 WL 1810190 at *1 *quoting Rodriguez v. Nat'l City Bank,* 725 F.3d 372, 382 (3d Cir. 2013).

Here, the commonality requirement is satisfied because there are multiple questions of law and fact that center on Defendant's class-wide pay policies and practices relating to whether automatic meal deductions reduced the amount of overtime wages paid to Field Specialists in weeks in which they worked over 40 hours—an issue that is common to the entire Settlement Class.

### iii. <u>Typicality</u>

Rule 23(a)(3) asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The requirement is satisfied when a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Calhoun v. Invention Submission Corp.*, No. 2:19-CV-01396, 2023 WL 2411354, at *7 (W.D. Pa. Mar. 8, 2023) (*citing In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).

The Plaintiff's claims are typical of the settlement class for purposes of this settlement because they concern the same alleged pay policies and practices of Defendant, arise from the same legal theories, and allege the same type of harm and entitlement to relief. Thus, Rule 23(a)(3)'s typicality requirement is satisfied.

### iv. <u>Adequacy</u>

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the class representative and the settlement class.  The Plaintiff Joshua Mittwol has retained competent counsel to represent him and the settlement class. The Plaintiff's selected class counsel regularly engages in complex wage and hour class and collective action litigation in several states across the country and other complex litigation similar to the present litigation and have dedicated substantial resources to the prosecution of this action. *See* Exhibit A. Class counsel has previously been named adequate class counsel in similar wage and hour class action cases. *Id.; see, also, Windheim, et. al. v. Tipsy Joe Corp.*, S.D. Fla. Case No. 0:22-cv-60278-CMA at D.E. 55 (Judge Altonaga granting final approval of Rule 23 class settlement and naming Mr. Richards class counsel); *see, also, Sparks, et. al. v. Kyodai Sushi Rock Café, Inc., et. al.*, Clay County Circuit Court Case No. 2022CA001268 (Feb. 2, 2023) (granting preliminary approval of class action wage and hour restaurant claims and naming Mr. Richards class counsel); *Laughlin, et. al. v. Fresh-Mex & Co. Corp., et. al.*, Duval County Circuit Court Case No. 16-2023-CA-1249 (Mar. 14, 2023) (granting preliminary approval of class action wage and hour restaurant claims and naming Mr. Richards class counsel); *Conrey, et. al. v. Beach Boys of Ft. Lauderdale, LLC*, S.D. Fla. Case No. 0:22-cv-60843-HUNT (Judge Hunt granting conditional certification of FLSA collective action and naming Mr. Richards counsel for FLSA collective comprised of Servers and Bartenders). Further information concerning Class Counsel's credentials can be found in the Richards Declaration attached hereto. *Id.*

Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the litigation, conducted extensive discovery and have

obtained a resolution that benefits all members of the putative class. *See Esslinger v. HSBC Bank Vevada, N.A.*, 2012 WL 5866074, at *8 (E.D. Pa. 2012) (approving settlement without formal discovery.)

### v. <u>Predominance and Superiority</u>

With respect to predominance, Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (*quoting In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008)). Here, the predominance requirement is satisfied for settlement purposes because Defendant's conduct was common to all of the class members and all of the class members were harmed by Defendant's conduct. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). The common legal and alleged factual issues here predominate over individualized issues, and resolution of the common issues for 75 settlement Class Members in a single, coordinated proceeding is superior to 75 individual lawsuits addressing the same legal and factual issues.

In sum, all of Rule 23's requirements are met for the purposes of certifying the proposed settlement class. Similarly, for the foregoing reasons, the settlement Class Members are similarly situated under the FLSA. Indeed, "the 'similarly situated' requirement for conditional certification is substantially less stringent than the Rule 23(b)(3) predominance requirement."" *Garcia v. Vertical Screen, Inc.*, No. 18-cv-4718, 2022 WL 282541, at *7 (E.D. Pa. Jan. 31, 2022). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Smith v. Merck & Co.*, No. 13-cv-2970, 2019 WL 3281609, at *5 n.5 (D.N.J. July 17, 2019). Thus, this Honorable Court should grant final certification of this settlement class and collective under Rule 23 and the FLSA for settlement purposes only.

### b. <u>Adequate Notice was Provided to the Settlement Class</u>

Under Fed. R. Civ. P. 23(b)(3), "the court must direct notice to the class members in the best way practicable under the circumstances." *See* Fed. R. Civ. P. 23(b)(3). Specifically,

> the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the Court carefully scrutinized the proposed notice procedure and content of the notice to ensure it was adequate prior to granting preliminary approval of the class settlement. *See* ECF No. 45. According to the Bench Declaration, "[a]s part of the preparation for mailing, all 75 names and addresses contained in the Class List were then processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing the Notice Packet." *See* **Ex. A**, ¶6. The notice packets were mailed on February 6, 2024, via U.S. First Class Mail and E-mail to all 75 individuals contained in the Class List. *Id.* ¶8. A total of 6 Notice Packets were returned as undeliverable, however, ILYM Group performed a computerized skip trace on all 6 of the returned Notice Packets and as a result of the skip trace, the 6 returned Notice Packets were successfully delivered to new addresses. *Id.* at ¶9. The claims administrator successfully delivered all Notice packets and did not receive any opt-outs or objections to the settlement. *Id.* ¶¶9-12. A total of 30 Class Members timely submitted valid claims forms, which yields a 40% participation rate. *Id.* ¶14. Under these circumstances, the notice was directed to class members in the best way practicable. *See In re Philips CPAP, Bi-Level PAP, and Mechanical Ventilator Products Litig.*, 2024 WL 1810190 at *4 (90% delivery rate deemed sufficient).

c. __The Settlement is Fair, Reasonable, and Adequate__

After determining certification is appropriate and notice is sufficient, the Court must determine whether the settlement is "fair and reasonable." Fed. R. Civ. P. 23(e)(1) & (e)(2); *See also*: *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *In re Nat'l Football League Players' Concussion Injury Litig.*, MDL 2323, 2014 WL 114351 (E.D. Pa. Jan. 14, 2014). The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *In re Nat'l Football League*, at *5; *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa 2000) (citing factors established in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). In addition to being substantively reasonable, the proposed settlement must be "the result of good faith, arms-length negotiations." *Id.* This test for whether a proposed settlement is fair, reasonable, and adequate is done using several factors outlined in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). *See Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007, 2019 WL 5394751 (W.D. Pa. Oct 22, 2019.)

Where the parties are represented "by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Kapolka,* 2019 WL 539475, at *3 *citing Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009). "Only rarely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" *Id. citing Bonetti*, 715 F. Supp. 2d at 1227. "In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class." *Austin v. Pennsylvania Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995).

The 9 *Gersh* factors for the Court to consider are:

(1) The complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d. Cir, 1975) (internal quotation and ellipses omitted).

### 1.  **Complexity, Expense, and Likely Duration**

In *Girsh*, the Court considered the complexity, expense, and likely duration of litigation in evaluating the fairness of a proposed settlement. "Cases requiring great expenditures of time, money, and other resources on behalf of the parties and the court [are] good candidates for settlement." *Deitz*, 2013 WL 2338496, at *5. "[T]he greater the apparent complexity and likely expense associated with litigating a case to its conclusion, the more likely it is that the Court will find a proposed settlement to be fair to employees and the public." *Kapolka*, 2019 WL 5394751, at *4.

Although the Parties engaged in substantial discovery, if the proposed settlement is rejected, the Parties will require substantial additional litigation and discovery, including several depositions and requests for additional documentation. *See Craig v. Rite Aid Corp.*, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013) (granting an unopposed motion for approval of class and collective action settlement). Settlement of the instant case would preserve substantial time, judicial resources, and expense, and avoid uncertainty. These factors weigh in favor of approval of the proposed settlement, and the court should not be required to expend judicial resources on a matter than both parties have an interest in resolving. *See Deitz*, 2013 WL 2338496, at *5.

### 2.  **Reaction of Class to Settlement**

The second *Girsh* factor, when considering the fairness and reasonableness of a class action settlement, gauges "whether any members of the 'class' have objected or otherwise reacted to the

proposed settlement." *Kapolka*, 2019 WL 5394751, at *4. The Preliminary Approval Order allowed for an "objections" period, which provided any interested party to submit an objection to the proposed settlement for the Court's review and consideration before final approval. *See* ECF No. 45. There are **zero** objections to the class settlement. *See* **Ex. A**. There are likewise **zero** opt-out of the class settlement. *Id.* The absence of any objection or opt-outs weighs heavily in favor of approval of the proposed settlement. Moreover, the 40% claims rate significantly exceeds what has previously been approved by courts across the country. *See* **Ex. A**; *see, also, Rossini*, 2020 WL 3481458 at *14 (granting final approval of class settlement with 4% claims rate); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683 (S.D. Fla. 2014) *citing Perez v. Asurion Corp.,* 501 F.Supp.2d 1360, 1377 (S.D. Fla. 2007) (granting final approval with 1.1% claims rate); *Sow v. City of New York*, 2024 WL 964595 at *2 (S.D.N.Y. Mar. 5, 2024) *citing Hernandez v. Immortal Rise, Inc.,* 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (noting that 20% participation rate is well above average in class action settlements); *Acevedo v. Workfit Med. LLC,* 187 F.Supp.3d 370 (W.D.N.Y. 2016) (approving settlement with 21% participation rate and noting the normal participation rate is around 10% or less); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 329 n.60 (3d Cir. 2011) (claims rates in class action settlements "rarely" exceed 7% "even with the most extensive notice campaigns"); *Wood v. Saroj & Manju Invs. Philadelphia LLC,* 2021 WL 1945809 at *7 (E.D. Pa. May 14, 2021) (approving settlement with reversion clause and 21% participation rate). Accordingly, the 40% participation rate and reaction to settlement is *extremely* positive by comparison and overwhelmingly supports approval.

### 3.  **Stage of Proceedings & Amount of Discovery**

In *Girsh*, the Third Circuit also considered the stage of the proceedings at the settlement posture and amount of discovery completed before the settlement, "to determine whether the parties have an 'adequate appreciation of the merits of the case before negotiating." *Kapolka*, 2019 WL 5394751, at *5 (*citing In re Prudential Ins. Co.*, 148 F.3d 283, 319 (3rd Cir. 1998)). There must be

"no risk that self-interested counsel is seeking a resolution of the claims on terms that are most beneficial to counsel alone without regard for the interests of the parties." *Deitz*, 2013 WL 2338496, at *6.

Here, the parties engaged in significant, informal discovery in preparation of mediation that resulted in a meaningful settlement for the class. Although the parties did not engage in formal discovery, such as depositions, the documents exchanged allowed the parties to adequately understand the scope, strengths, and weaknesses of the claims, thereby providing valuable insight into the merits of the case. Defendant provided substantial compensation data and proof of pay policies and practices, that alleged a dispute as to the material facts of the case. Using the data provided by Defendant, Plaintiff's Counsel was able to assess the potential damages for the entire collective. These factors provide a showing that "both parties had an adequate appreciate of the merits of the case before negotiating, and that the third *Girsh* factor therefore mostly favors approval (and certainly does not cut against approval)." *Kapolka*, 2019 WL 5394751, at *5.

### 4. <u>Risks of Establishing Liability & Damages and of Maintaining the "Class"</u>

In *Girsh*, the fourth factor requires the Court to "'survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefit of an immediate, certain settlement.'" *Kapolka*, 2019 WL 5394751, at *5 *citing Deitz*, 2013 WL 2338496, at *6.

Here, in addition to the risks inherently associated with litigation, Defendant asserts many legal defenses that, if were established, would pose significant risks to the viability of Plaintiff's claims. Additionally, Defendant has sought to limit Plaintiff's damages, as Defendant maintains that it acted in conformity with the FLSA and New Jersey law. Likewise, Defendant also faces the risk of an unfavorable jury finding for an amount that would likely exceed the settlement amount.

*See Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008). Defendant's ability to pay the proposed settlement was not a consideration. The parties were aware of these risks while negotiating the proposed settlement. These factors, specifically the risks associated with continued litigation, liability, and damages, weigh heavily in favor of an approval of the proposed settlement.

**5.    Ability of Defendants to Withstand a Greater Judgment**

The fifth factor under *Girsh* gauges "whether the defendant could withstand a judgment for an amount significantly greater than the proposed settlement." *Kapolka*, 2019 WL 5394751, at *6 *citing Deitz*, 2013 WL 2338496, at *7. However, "a defendant's ability or inability to withstand a greater judgment is 'irrelevant' when 'the record includes no evidence related to the [d]efendant's ability to pay an amount greater than the settlement, nor … any indication that this factored into settlement negotiations." *Id.*; *see, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 548 (3d. Cir. 2004). Here, Defendant's ability to pay while negotiating the proposed settlement was not a significant consideration. As a result, this factor is irrelevant in the instant case.

**6.    Reasonableness of Settlement**

Finally, *Girsh* requires the Court to *broadly* assess the reasonableness of the settlement by "balancing Plaintiff's best possible recovery against the risks of litigation." *Kapolka*, 2019 WL 5394751, at *6. This consideration includes "comparing the value of the damages that [the] plaintiffs would likely recover if successful, offset by the risk of not prevailing, with the amount of the proposed settlement. *Id.* (*citing Deitz*, 2013 WL 2338496, at *7). Where "calculating the 'best possible recovery' for the plaintiffs is exceedingly speculative, the reasonableness of the settlement can be fairly judged by looking at the nature of the settlement itself and taking into consideration the risks of litigation." *Id.*

Here, if the parties were required to proceed with litigation, both sides would face a substantial risk. As mentioned previously the parties reached this settlement through competent

and experienced counsel, and negotiations were made at arms-length with the assistance of an experienced wage and hour mediator. Counsel for both parties in this case are highly experienced wage and hour litigators familiar with complex disputes arising under the FLSA and various state wage and hour laws. *See* **Ex. B**. Moreover, the settlement amount is imminently reasonable. Given the claims asserted and defenses raised, the settlement amount is not too large or unusually small.

For example, the challenged meal deduction policy in this case, if found to be unlawful, would yield a maximum recovery of up to 1.5 times each class member's applicable hourly rate for each hour worked over 40 in a workweek after all deducted hours are added back. Under the terms of the settlement, each Class Member who timely submitted a Claim Form receives a guaranteed minimum of $25. The Settlement Administrator then calculates each Settlement Class Member's actual weeks where they worked more than 38 hours from August 19, 2019, to June 9, 2023, and allocates 3 points for each of these weeks. The Settlement Administrator has also calculated each Settlement Class Member's actual weeks where they worked more than 38 hours as a Field Specialist in New Jersey during the period of August 27, 2018, through August 18, 2019. The Settlement Administrator has allocated 1 point for each of these weeks. The remainder of the Net Settlement Fund (after the $25 allocations are paid) are allocated in Settlement Payments to the Settlement Class Members on a pro rata basis according to the number of "points" calculated. This type of claims-made process has been approved by other Courts in the Third Circuit. *See, e.g., Milliron v. T-Mobile USA, Inc.,* 2009 WL 3345762 at *6 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd,* 423 F. App'x 131 (3d Cir. 2011); *Jackson v. Wells Fargo Bank,* 136 F.Supp.3d 687, 708-9 (W.D. Pa. 2015) ("There is nothing inherently suspect about requiring class members to submit claims forms in order to receive payment"). The average individual settlement payment is approximately $1,634.59 and the highest individual settlement payment is approximately $8,201.43. *See* **Ex. A**, ¶17.

311211193v.1

d. **The Court Should Approve the Requested Incentive Award, Class Counsel's Request for Attorney's Fees and Costs, and Payment to the Settlement Administrator**

i. **Incentive Award**

In addition to his award under the allocation formula as a member of the putative class, counsel proposes that the Plaintiff will also receive payment in the amount of $15,000.00 as a service award and for a general release of claims. *See* ECF No. 37-1. The Plaintiff spent days of his life assisting the Class Members' discovery, negotiation and resolution of this matter. Furthermore, service awards are not uncommon and separate consideration paid to a class representative from the common fund in exchange for executing a general release is permissible under a Rule 23 analysis. *See, e.g., Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 496 (E.D. Pa. 2016) (Approving compensation for class representatives for services they provide, risks they incur and as a reward for the benefit to the class and public at large); *see, also, Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 *citing Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000); *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011); *Renton v. 5th Bite of the Apple LLC,* S.D. Fla. Case No. 0:22-cv-62082-PMH at ECF No. 66 (Jan. 23, 2024) (granting final approval of wage and hour class settlement and awarding $15,000 incentive award to Class Representative); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) (approving $15,000 incentive award to Class Representative in wage and hour class action settlement); *Chakejian v. Equifax Information Services, LLC,* 2011 WL 2411109 at *220-221 (E.D. Pa. 2011) (approving $15,000 incentive award in class action settlement); *In re Auto. Refinishing Paint Antitrust Litig.,* 2008 WL 63269 at *7-8 (E.D. Pa. 2008) (approving $30,000 incentive award); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350 at *18-19 (E.D. Pa. 2004) (approving $25,000 incentive award); *Stafford, et. al. v. Atlanta Restaurant Partners, LLC,* S.D. Fla. Case No. 0:23-cv-61053-LMR at ECF No. 85 (Apr. 26, 2024) (granting preliminary

approval and provisionally approving incentive awards of $17,500 to each of the Class Representatives).

### ii. <u>Attorney's Fees and Costs</u>

On April 10, 2024, Class Counsel filed their Unopposed Motion for Attorney's Fees and Costs *See* ECF No. 46. For the reasons set forth therein, Class Counsel seeks an award of approximately one-third of the Fund ($36,666.66) to be paid from the Fund as attorney's fees and $3,345.50 to be payable as reimbursable costs, for a grand total of $40,012.16.[2] To date, the work performed by Class Counsel has been without compensation and payment has been entirely contingent upon Class Counsel obtaining a favorable outcome for the Plaintiffs. *See* **Ex. B**. Class Counsel has obtained a meaningful recovery for the Settlement Class (in which 40% of the class members filed claims forms) and no member of the class has objected to Class Counsel's request to be awarded attorney's fees and costs. Accordingly, Class Counsel respectfully requests to be awarded $40,012.16 payable from the Fund – an amount that is significantly less than what Class Counsel actually incurred in attorney's fees based on a traditional lodestar approach. *See* **Ex. B**; *see, also,* ECF No. 46; ECF No. 46-1.

On November 2, 2023, the Third Circuit Court of Appeals examined the reasonableness of attorney's fees and costs awarded to class counsel in a Rule 23 class settlement. *See, e.g., In Re Wawa, Inc. Data Security Litigation*, 2023 WL 7210345 at *1 (3d Cir. Nov. 2, 2023). In *In re Wawa, Inc. Data Security Litigation*, the district court overruled objections concerning the reasonableness of attorney's fees and costs awarded to class counsel in a Rule 23 class settlement and ultimately

---

[2] This is within the range of a typical fee award in a common fund case. *See, e.g., Galt v. Eagleville Hospital*, 310 F. Supp 3d 483, 498 (E.D. Pa., 2018)(fee awards in common fund cases range from 19 to 45%.); *In Re General Instrument Sec. Litigation*, 209 F. Supp. 2d 423, 433 (E.D. Pa. 2001) ("no general rule as to what percentage is appropriate;" citing progeny of cases where one-third fee was awarded); *Esslinger v. HSBC Bank Nevada, N.A.*, 2012 WL 5866074 at *14 (E.D. Pa. Nov. 20, 2012) (finding that in private contingency fee cases, lawyers routinely negotiate agreements for 30-40%, thus finding an award of fees for 30% "squarely within that range.")

granted final approval. *Id.* The district court approved class counsel's request for an award of 25%
of a "constructive common fund" in the amount of $3.2 million for attorney's fees, costs, and
litigation expenses even though the parties had included a "clear sailing" provision and a "fee
reversion" provision in the settlement. *Id.*

On appeal, the Third Circuit reversed the lower court, and expressed concern over the
"clear sailing" provision in the class settlement agreement which allowed class counsel to petition
the district court for a percentage of the class fund as payment for attorney's fees and costs with no
objection from the defendant. *Id.* The Third Circuit noted that while the existence of this "clear
sailing" provision is often common and "not an automatic bar to settlement approval," it
nevertheless "deserves careful scrutiny" when calculating a reasonable fee award. *Id.* The Court
expressed particular concern on this issue because the parties also included a "fee reversion" in the
settlement agreement whereby any attorney's fees not approved by the Court would revert back to
the defendant:

> It is a bewildering proviso: why would class counsel agree to give part of the
> common fund they secured to the *defendant* instead of their clients? The unfortunate
> conclusion is that class counsel asks for it as a "gimmick for defeating objectors."
> *Pearson,* 772 F.3d at 786. A trick that strips class members of their standing to
> challenge the fee award, because "any action taken by the court would not redress
> the class member's purported injury." *Briseno,* 998 F.3d at 1027. And when
> combined with a clear sailing clause, in which the defendant does not object to the
> fee award, any action under 23(h) is foreclosed. *Id.*

2023 WL 7210345 at *10.

Here, the Amended Class Settlement reached does not trigger any of the concerns raised
by the Third Circuit in *In Re Wawa, Inc. Data Security Litigation.* Neither the initial Class Settlement
Agreement, nor the Amended Class Settlement Agreement, contains a "fee reversion." *See* ECF
No. 37-1; *see, also,* ECF No. 28-1. This is a crucial factor for the Court to consider. While the
Defendant does not oppose Class Counsel's request for a percentage of the fund to be paid as

attorney's fees and costs, the existence of this "clear sailing" provision does not automatically bar approval of the settlement. *In Re Wawa, Inc. Data Security Litigation*, 2023 WL 7210345 at *9. Furthermore, the "process and substance of the settlement … does not indicate any collusion." *Id.*

The following additional factors indicate that there has been no collusion concerning the request for an award of attorney's fees and costs in this case:

> a) An independent and neutral mediator assisted in arms-length negotiations;
>
> b) The amount of attorney's fees and costs sought by virtue of the "percentage of the common fund" approach is significantly less than what class counsel has actually incurred in this case in zealously representing the interests of Plaintiff and the Class;
>
> c) Class Counsel has put Plaintiff and the Class's interests above their own by requesting a method of compensation which yields a smaller recovery for Class Counsel than what was actually incurred in this case, thus providing more compensation for the Class; and
>
> d) There is no fee reversion in the original or Amended Cass Action Settlement Agreement.

Collectively, these factors indicate that there is no evidence of collusion in this case.

### iii.    **Payment to the Settlement Administrator**

Finally, Plaintiff requests that the Court award ILYM Group – the Settlement Administrator – payment in the amount of $5,950.00 to be payable from the Fund. *See* **Ex. A**. ILYM Group has performed all of its duties as Settlement Administrator, and its administration of the Court-approved notice reached every single class member in this case. *Id.* The 100% delivery rate of the Notice ultimately enabled 40% of the Class Members to submit claims. For the efforts undertaken by the Settlement Administrator, the Plaintiff respectfully requests that payment in the amount of $5,950.00 be awarded to ILYM Group, Inc.

**IV.**     **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court enter the Final

Approval Order attached hereto and grant the full relief sought within this agreed Motion.

Respectfully Submitted,

QUINN LOGUE LLC

/s/ *Matthew T. Logue*
Matthew T. Logue, Esquire
Pa. ID No. 87416

200 First Avenue, Third Floor
Pittsburgh, Pennsylvania 15222

USA EMPLOYMENT LAWYERS –
JORDAN RICHARDS PLLC

*/s/ Jordan Richards*
Jordan Richards, Esquire
Florida Bar No. 108372
New York Bar No. 5859095
*Pro Hac Vice*
Michael Miller, Esquire
Florida Bar No. 0064005
New Jersey Bar No. 0057-2009
*Pro Hac Vice*

1800 SE 10th Ave. Suite 205
Fort Lauderdale, Florida 33316

*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF CONFERENCE**

Pursuant to the local rules, prior to the filing of the instant motion, the Parties conferred

and agree as to the relief sought herein.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

311211193v.1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing motion was filed through CM/ECF this 22nd

day of May 2024 and served on the counsel listed below.

By:  _/s/ Jordan Richards_
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST

JACOB OSLICK, ESQ.
PA Bar No. 311028
joslick@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Ave. 32nd Floor
New York, NY 10018-1405
Tel: (212) 218-5500
Fax: (212) 218-5526
*Counsel for Defendant*

MATTHEW LOGUE, ESQ.
matt@quinnlogue.com
QUINN LOGUE, LLC
200 First Ave. Third Floor
Pittsburgh, PA 15222
*Attorneys for Plaintiff and the Class*

311211193v.1